Donahue, J.,
dissenting. Section 7419, General Code, was enacted for the sole purpose of meeting extraordinary conditions. That section authorizes a levy to be made under its provisions only when the ordinary levies authorized by law for road purposes are not adequate to make the necessary repairs.
The word “emergency” naturally and necessarily includes extraordinary situations or conditions that cannot be met and mastered in the ordinary and usual way.
It is the unsafe condition of the principal highways of a county, and not the causes that produced that condition, that presents an emergency to the public authorities whose duty it is to. keep the roads in repair and safe for public travel, yet who cannot do so with the proceeds of the ordinary levy at their disposal.
An emergency, as defined by lexicographers, is not merely a sudden and unexpected happening, an unforeseen occurrence or condition, but includes also ' “a pressing necessity” or “exigency.” “Exigency” is defined as “a case demanding immediate action, supply, or remedy.”
If the fact that one of the principaThighways of a county has become unfit and unsafe for travel *14 does not present a case demanding immediate action or remedy, regardless of how this condition came about, then of course this writ should be refused.
It is conceded that if the dangerous condition of the highway had been caused by a freshet, landslide, the wear of watercourses, or other casualty, then a situation would be presented demanding immediate remedy, for which purpose this extraordinary levy might be made; but it is held that if such dangerous condition of the highway were caused by neglect or inattention no such exigency would be presented, notwithstanding the conditions confronting the board of county commissioners and the traveling public would be exactly the same in the latter as in the former case.
The consequences that must follow such a construction, if relief is not afforded by further legislation, will be intolerable.
Under the provisions of Section 7419, General Code, the board of county commissioners is required to find, first, that a principal highway of the county has become unfit for travel, or will cause difficulty, danger or delay to teams passing thereon, and, second, that the ordinary levies authorized by law will be inadequate to remedy these defects.
The finding of the board of county commissioners on these two important questions, in the absence of fraud, collusion, or abuse of discretion, must be accepted as a final determination of the truth of these facts, not only by the public, but by the courts of this state.
*15 It follows, then, that notwithstanding these findings of facts by the board of county commissioners, that under the construction given this statute by the majority of this court there is no possible way open to the board of county commissioners to remedy the dangerous and defective condition of the highway. The public must continue to travel it at the risk of injury to person and property, and rely upon recovering from the county damages for any such injury; or the highway must be abandoned forever.
It would seem unnecessary to say that this was not the intention or the purpose of the general assembly of Ohio when it passed the legislation providing for road repairs.
In the construction of a statute, consideration should be given to all other legislation upon the same subject-matter, and if possible the whole should be harmoniously construed, so as to provide a practical working plan for the accomplishment of the purposes intended.
The commissioners of a county are required to keep its principal highways in repair, free from nuisance, and safe for public travel. It is further provided by statute, Section 2408, General Code, that the board of county commissioners shall be liable^ in its official capacity, for damages for its failure to do this.
It would hardly seem possible that the legislative department of our government intended to require the commissioners of a county to keep the public highways in a safe condition for public travel, provide that the county should be liable in damages for *16 failure to do so, and then withhold from the board of county commissioners the means of performing the duties imposed upon it. Such a penny-wise-pound-foolish policy would not only shortly bankrupt a county treasury, but would endanger lives and impose the hardship of primitive road conditions upon the people of our state.
It has been suggested that if a levy were permitted under this statute, when by reason of neglect or inattention to repairs a highway had become in such a dangerous and unfit condition for travel that the ordinary levies authorized by law for the purpose would be inadequate for such repair, county commissioners would designedly permit roads to become out of repair and then treat their own failure, neglect and inattention as constituting an emergency.
This might be a good argument to the lawmaking power of the state, but it is no argument to a court in the construction of this statute. Whether wisely or unwisely, the legislature has committed to the board of county commissioners authority to determine the facts prerequisite to the validity of this extraordinary levy.
The Smith one per cent, law was enacted in response to a popular demand for economy in the administration of public affairs, but a careful scrutiny of this law discloses that it was aimed at extravagance in the current ordinary expenses of administration, and wisely exempted from its provisions not only past indebtedness but also such extraordinary expenses as could not in the very nature *17 of things be anticipated and included within a just limitation.
The general assembly of Ohio in enacting this law recognized that the very life of the law depended upon exempting from its operation not only the inherited burdens of past extravagance but also extraordinary and unforeseen expenses, the amount of which could not be estimated in advance. Every time the proceeds of a levy for current expenses, made under the limitations of this law, is burdened with extraordinary and unusual expenses, the enemies of the law are furnished with an additional argument for its repeal.
The original Smith one per cent, law, construed in accordance with the evident intent of the general assembly responsible for its passage, was safe from assault, for it furnished a sufficient income to meet all reasonable current demands and effected a salutary economy in reference thereto.
A subsequent legislature, however, amended the law, by bringing within its limitations all past indebtedness. The result has been that in many taxing districts of the state the amount that the original Smith one per cent, law permitted to be levied for current expenses has been practically exhausted in the payment of prior indebtedness, leaving present administrations without funds to meet the necessary and ordinary expenses of government. Add to this the further burdens of extraordinary expenses that never were intended to come within the limitations of this law, and the existence of this measure, the most salutary ever enacted to restrain *18 official extravagance and protect the public from exorbitant tax levies, is still further imperiled.
Aside from these considerations, it is evident that Section 5649-4, General Code, recognized and declared that the purpose named in Section 7419, General Code, for which an extraordinary tax might be levied, is an emergency within the contemplation of that provision of the statute exempting this levy from the limitations imposed by it.
The weakness of the argument in support of a separation of this statute (Section 7419) with reference to causes instead of the condition to be remedied, is sought to be strengthened by the claim that the levies authorized by the other sections referred to in Section 5649-4, General Code, may' be divided with reference to the purposes for which such levies are authorized.
While in no wise important to the disposition of this case, it is by no means certain that any of the other sections named in Section 5649-4 should be given a different construction. It is conceded that the conditions named in Sections 4450, 5629, and 7630-1, General Code, are emergencies. This leaves but two other sections, the one under consideration and Section 4451.
While the language used in Section 4451, General Code, would seem to bring within its terms all expenses that might be incurred by the board of health under the provisions “of this chapter,” yet other sections of the same chapter show conclusively that this sectipn can not be so construed; otherwise the further legislation in the same chapter, authorizing the issue of bonds and the levy of a tax to meet the *19 same, and for a “sanitary fund,” in addition to all other levies authorized by law, would be meaningless.
Section 4451 also authorizes a levy “to carry into effect the provisions of this chapter.” This adds nothing to the earlier provision of this section that “when expenses are incurred by the board of health under the provisions of this chapter,” etc., but merely restates the same provision in different language.
If it were conceded, however, that Section 4451, General Code, as it now reads, authorizes a levy for all the expenses incurred under the provisions of this chapter, it by no means follows that the purposes for which these expenses are incurred are not emergencies within the meaning of Section 5649-4, General Code.
The board of health of a municipality is not a mere local agency for local purposes, but on the contrary is a part of a system for the administration of the police power of the state for the conservation of the lives and health of its citizens. If a municipality fails or refuses to establish a board' of health or appoint a health officer, the state board of health may appoint a health officer for the municipality and fix his salary and term of office, and his salary as fixed by the state board of health, and all necessary expenses incurred by him in the performance of his duties, shall be paid by and be a valid claim against such municipality, regardless of its other needs.
Section 4451, General Code, authorizes but a single levy for expenses incurred by the board of *20 health under the provisions of that chapter, part of which are admittedly emergencies. The council in making this levy is not required to make separate levies for separate purposes, or to specify how much is levied for one purpose or how much for another. The levy is but one item and for but a single purpose. If, then, Section 5649-4 is to be construed as exempting only a part of that levy from the limitation of the Smith one per cent, law, how is that part to be ascertained? Evidently not from the levy itself, for, as construed by a majority of this court, that is a levy for all the expenses incurred by the board of health under the provisions of that chapter. The general assembly when it passed the Smith one per cent, law rtiust have considered as emergencies the purposes for which the entire levy is authorized, otherwise it would have provided for a separation of the levy into different levies for different purposes, so that the character of each could be easily determined. As it now stands, either all of this levy must come within the exemption provided in Section 5649-4, General Code, or none of it.
Regardless, however, of whether the levy authorized by Section 4451, General Code, may be separated with reference to the purposes for which the levy is made, that cannot affect the construction of Section 7419, General Code, for in the last analysis that section authorizes a levy for but one purpose, and that purpose is the immediate remedy of a defective and dangerous condition of a principal highway of the county, when the ordinary levies for road repairs are not adequate for such *21 purpose. It is a condition, not the cause, that demands immediate remedy.
For these reasons I am unable to concur in the judgment entered by a majority of this court in this case.